CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
September 03, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 5:04-cr-00015 |
| Rickey A. Merica, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

**MEMORANDUM OPINION**

In 2005, a jury found Defendant Rickey A. Merica guilty of one count of conspiracy to distribute 500 grams or more of methamphetamine and two counts of possession and brandishing of a firearm in furtherance of a drug trafficking offense. (Dkts. 110, 135.) The court sentenced Merica to 619 total months of imprisonment, followed by a five-year term of supervised release. (Dkt. 161 at 2–3.) In 2015, following the United States Sentencing Commission's amendments to the guideline provisions, (Dkt. 244), the court reduced Merica's sentence to 572 months, (Dkt. 246). Then, in 2021, the court further reduced Merica's sentence to a total of 356 months when it granted in part and denied in part Merica's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1). (Dkts. 250, 267.)

This matter is before the court on Merica's second motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1), (Dkt. 275), and counsel from the Federal Defender Office's supplemental filing in support of Merica's motion for compassionate release, (Dkt. 285). Merica seeks a reduction of his sentence to time served followed by five years of supervised release. For the following reasons, the court will deny the motions. (Dkts. 275, 285.)

## I. Background

On October 20, 2004, a grand jury returned a four-count indictment against Merica and three other co-defendants. (Dkt. 1.) The grand jury only charged Merica with one count of conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (*Id.* at 1–2.) On April 1, 2005, Merica's three co-defendants entered a plea of guilty as to Count One of the indictment. (Presentence Investigation Report ¶¶ 4–6 (Dkt. 248) [hereinafter "PSR"].) The codefendants had different plea agreement terms and were sentenced to different terms of imprisonment—24, 19, and 78 months, respectively. (*Id.*) Also on April 1, 2005, the government moved to continue Merica's trial given that "substantial evidence of additional serious violations of federal law has been collected," and the government sought to present that additional evidence to a grand jury. (Dkt. 82 at 1–2.)

On May 25, 2005, a grand jury returned a superseding indictment that charged only Merica with three felony counts. (Dkt. 110.) Count One charged Merica with conspiring to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (*Id.* at 1.) Count Two charged him with possessing and brandishing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c) and 924(c)(1)(A)(ii). (*Id.* at 2.) Count Three charged Merica with another count of possessing and brandishing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(B)(i), and 924(c)(1)(C)(i). (*Id.* at 2–3.) Count Three was based on conduct "separate from and in addition to the conduct alleged in Count Two." (*Id.* at 2.)

Merica was tried by a jury before the Honorable Glen E. Conrad on July 21–22, 2005. (Dkts. 114, 129, 131.) Evidence at trial "indicated Merica was the principle [sic] source for a number of individuals who were reselling methamphetamine in the Shenandoah Valley," and that he "sold multiple pound quantities of methamphetamine" during the time of the conspiracy. (PSR ¶ 11.) The trial also included testimony that Merica "frequently carried a firearm on his person for protection during narcotics transactions," "threatened [a co-defendant] by placing a gun to her head if she testified against him," and "threatened [another individual] with a gun." (*Id.*) On the second day, the jury returned a verdict of guilty on all three counts. (Dkts. 131, 135.) For Counts Two and Three, the special verdict form reflects the jury's findings that Merica brandished firearms. (Dkt. 135 at 1–2.)

This court held a sentencing hearing on November 1, 2005. (Dkts. 160, 193.) At the hearing, Judge Conrad adopted in full the probation office's presentence report. (Dkt. 193 2:21–3:25.) Each one of Merica's Counts carried mandatory minimum imprisonment term of: 10 years for Count One, 7 years for Count Two, and 25 years for Count Three. (PSR ¶ 54 (citing 21 U.S.C. §§ 841(b)(1)(A), 18 U.S.C. 924(c)(1)(A)(ii), and 18 U.S.C. 924(c)(1)(B)(i).) Under the 2004 edition of the Guidelines Manual, the guideline range for imprisonment for Count One was 235 to 293 months. (*Id.* ¶ 55.) Judge Conrad sentenced Merica to 235 months, the lowest end of the guideline range for Count One. (Dkt. 161 at 2.) The Sentencing Guidelines also "preclude[ed] the need for offense level computations" for Counts Two and Three because statutes imposed mandatory consecutive sentences—7 years (84 months) for Count Two and 25 years (300 months) for Count Three, respectively. (PSR ¶¶ 27–28, 55

(citing U.S.S.G. § 5G1.2(a)).) Accordingly, the court sentenced Merica to a total of 619 months: (1) 235 months for Count One; (2) 84 months for Count Two, to be served consecutively to the Count One term; and (3) 300 months for Count Three, to be served consecutively to the Counts One and Two terms. (Dkt. 161 at 2.)

The court considered several factors, including the harmful impacts of Merica's drug distribution on the community, the evidence introduced of Merica's threatening behavior, and his failure to accept responsibility. (Dkt. 193 6:5–7:19.) But the court also noted its concern about the fairness of the 300-month sentence for Count Three and explained that it "is constrained by the decisions of the higher court." (*Id.* 7:24–8:8.) Finally, the court sentenced Merica to a five-year term of supervised release for each of the Counts, to be served concurrently. (Dkt. 161 at 3.) Neither party objected to the legality of the sentence. (Dkt. 193 8:18–25.)

On February 18, 2015, the court issued a notice to the parties following the United States Sentencing Commission's amendments to the federal sentencing guidelines that made "certain federal defendants convicted of offenses involving controlled substances . . . eligible for a reduction in their current sentences, pursuant to 18 U.S.C. § 3582(c)(2)." (Dkt. 244 at 1.) The court advised the parties that it believed Merica was eligible for such a reduction and intended to grant the full measure of the reduction, which would reduce his period of incarceration for Count One from 235 months to 188 months. (*Id.*) It gave both parties the opportunity to challenge the proposed sentence and appointed the Federal Public Defender to assist with the issue. (*Id.* at 2.) The United States Attorney's Office responded that it had

no objection to the reduction. (Dkt. 245 at 4.) On April 7, 2015, Judge Conrad reduced Merica's total sentence from 619 months to 572 months, pursuant to 18 U.S.C. § 3582(c)(2). (Dkt. 246.)

On July 20, 2020, Merica moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Dkt. 250.) In his *pro se* motion, he asserted that the extreme disparity between his current sentence and a sentence imposed today, attributable to the elimination of "stacked" § 924(c) sentences, constitutes an "extraordinary and compelling reason[]" warranting a sentence reduction. (*Id.* at 1.) In a supplemental motion filed by counsel, Merica also argued that he faced a particular susceptibility to COVID-19 and medical complications given his compromised immune system caused by repeated MRSA infections and his high cholesterol. (*See generally* Dkt. 259.) On February 8, 2021, Judge Conrad entered an order granting in part and denying in part Merica's *pro se* motion and supplemental motion filed through counsel. (Dkt. 267.) The order held that the 18 U.S.C. § 3553(a) factors "weigh in favor of a sentence reduction, but not immediate release." (*Id.* at 6.) The court reasoned that, considering the change to the law regarding § 924(c) sentences, it was appropriate to reduce Merica's Count Three sentence—originally 300 months under the mandatory minimum—to 84 months, resulting in a new total sentence of 356 months' incarceration. (*Id.* at 4–6.) All other terms and conditions of the original sentence remained the same. (*Id.* at 6.)

Merica filed the instant motion, a second *pro se* motion for compassionate release, on September 24, 2025. (Dkt. 275.) Merica represents that there are "extraordinary and compelling reasons" for another sentence reduction because (1) he is suffering from a terminal

illness; (2) he is suffering from serious medical conditions or deterioration that "substantially diminishes [his] ability to provide self-care within the environment of a correctional facility, and [he is] not expected to recover from this condition"; (3) he has a medical condition "that requires long-term or specialized medical care that is not being provided and without which [he is] at risk of serious deterioration in health or death"; (4) he is 65 years or older, experiencing deterioration in physical health because of the aging process, and has served at least 10 years of his sentence; (5) his mother has become incapacitated and he is the only available caregiver; and (6) he received an unusually long sentence, has served at least 10 years imprisonment, and a change in law would produce a gross disparity between the sentence being served and the sentence likely to be imposed in September 2025. (Dkt. 275 at 4–6; *see* Dkt. 285 at 3.)

The court found good cause to appoint counsel from the Federal Public Defender for the Western District of Virginia ("FPD") to represent Merica under the First Step Act and investigate whether Merica has a valid claim. (Dkt. 277.) The court imposed a deadline for FPD counsel to file a supplemental motion for compassionate release. (*Id.*) The court granted FPD counsel's motion to stay the deadline to file a supplemental motion given the government shutdown and pause on records requests. (Dkts. 279, 280.) After the stay was lifted and deadline extended once more, (Dkts. 281, 283, 284), on February 2, 2026, counsel for Merica provided a supplement to his motion for compassionate release. (Dkt. 285.) On March 16, 2026, the government responded in opposition to the motion for compassionate release. (Dkt. 289.) The government filed a notice of supplemental authority on June 23, 2026, citing the

Supreme Court's recent opinion in *Rutherford v. United States*, 608 U.S. ---, 146 S. Ct. 1320 (2026). (Dkt. 292.)

## II. Standard of Review

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But Congress has provided a limited exception to that rule. *See id.* § 3582(c)(1)(A). As relevant here, a court may reduce an imposed term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the relevant 18 U.S.C. § 3553(a) factors favor release. *United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025) (quoting 18 U.S.C. § 3582(c)).

The First Step Act enables an inmate in federal custody to move for a sentence reduction, also referred to as compassionate release. *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194 (2018) (codified at § 3582(c)(1)(A)). To obtain early release, the defendant must have exhausted their administrative remedies before filing a compassionate release motion. 18 U.S.C. § 3582(c)(1)(A). "Defendants have exhausted their administrative remedies when they 'appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)).

As the movant, the defendant also has the burden of establishing that "extraordinary and compelling reasons" justify compassionate release. *Burleigh*, 145 F.4th at 550. Section

3582(c)(1)(A) does not define "extraordinary and compelling reasons," but Congress has granted authority to the Sentencing Commission to do so. *Id.* at 547–48. Accordingly, the Commission has issued a policy statement that defines the circumstances constituting "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2025). This statement guides the Court's analysis of motions for compassionate release decided after November 1, 2023. *United States v. Crawley*, 140 F.4th 165, 170 (4th Cir. 2025). The non-exhaustive list of extraordinary and compelling reasons for reducing a sentence includes:

(1) the medical circumstances of the defendant, U.S.S.G. § 1B1.13(b)(1);

(2) the age of the defendant, U.S.S.G. § 1B1.13(b)(2);

(3) the family circumstances of the defendant, U.S.S.G. § 1B1.13(b)(3);

(4) whether the defendant was a victim of abuse while incarcerated, U.S.S.G. § 1B1.13(b)(4);

(5) "other reasons," U.S.S.G. § 1B1.13(b)(5); or

(6) an unusually long sentence, if the defendant meets certain conditions, U.S.S.G. § 1B1.13(b)(6).

*United States v. Moore*, No. 4:15-cr-00001, 2024 WL 4148646, at *2 (E.D. Va. Sept. 11, 2024); *see* U.S.S.G. § 1B1.13(b). Once the defendant has exhausted his administrative rights to appeal the BOP's decision and has shown extraordinary and compelling reasons for a sentence reduction, the district court must then consider the appropriate factors set forth in 18 U.S.C. § 3553(a) and "determine whether the requested reduction in sentence is consistent with 'applicable policy statements issued by the Sentencing Commission.'" *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024).

## III. Analysis

Merica requested a sentence reduction from the warden of his facility, FMC Butner. (Dkt. 275-4 at 1.) His request was denied on August 19, 2025. (*Id.*) Now, after having exhausted this administrative process,[1] he asks this court for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. 275.)

### A. Cited Policy Statement Provisions

Merica invokes seven different provisions of the Sentencing Commission's policy statement in support of his motion. (*See id.* at 4–6; Dkt. 285.) The Commission's policy statement clarifies that any one of these circumstances or "a combination thereof" constitute "extraordinary and compelling reasons" that warrant a § 3582(c)(1)(A)(i) sentence reduction. U.S.S.G. § 1B1.13(b). The court addresses each of the cited provisions in turn and then considers them in the aggregate.

1. Age and Medical Circumstances

Merica points to both his medical circumstances and age as extraordinary and compelling circumstances for compassionate release under U.S.S.G. §§ 1B1.13(b)(1)(A), (b)(1)(B), (b)(1)(C), and (b)(2). (Dkt. 275 at 4–5.) As part of his "Medical Records and Additional Medical Information" form, he attaches "Abeloff's Clinical Oncology Sixth Edition" and a "Prostate Cancer" chapter of a scientific publication. (Dkt. 275-3.) He also appends a National Public Radio article that discusses how a quarter of the deaths in Bureau

[1] Even if Merica had not exhausted the administrative process, the Fourth Circuit has held that this exhaustion requirement is non-jurisdictional "and thus waived if it is not timely raised" by the government. *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2022). Here, the government does not raise exhaustion in its response brief. (*See* Dkt. 289.)

of Prisons ("BOP") custody occurred in FMC Butner, the federal medical center housing inmates who need intensive care and the BOP's largest cancer treatment facility. (Dkt. 275-4 at 2–17; *see* Dkt. 275 at 6.) Merica is currently detained in FMC Butner. (Dkt. 275 at 7.) He asserts that BOP and the FMC Butner facility are "medically understaffed," which "[l]eads to inmates not being treated in a timely manner." (*Id.* at 6.)

The FPD's supplemental filing provides greater detail regarding Merica's medical circumstances and attaches numerous medical records reflecting his conditions and BOP care. (*See* Dkt. 285 at 2, 4; Dkt. 285-3.) Merica was diagnosed with prostate cancer on February 11, 2025. (Dkt. 285-3 at 5–6.) He completed radiation treatment in August 2025, and his cancer is now in remission. (*Id.* at 852; Dkt. 291-1 at 7.) On October 30, 2025, Merica was diagnosed with prediabetes. (Dkt. 285-3 at 6.) Merica has also been diagnosed with high cholesterol since 2014 and was put on a medication to which he was "[r]esponding well" as of April 2025. (*Id.* at 5.) In the past, Merica has also reported a weakened immune system from multiple MRSA infections. (Dkt. 259 at 9; Dkt. 285-3 at 6–7.)

*i. Section 1B1.13(b)(1)(A)*

First, Merica states in his *pro se* motion that he has a terminal illness rendering him eligible for release pursuant to § 1B1.13(b)(1)(A). (Dkt. 275 at 4.) He does not specify which medical condition constitutes a terminal illness. The policy statement defines terminal illness as "a serious and advanced illness with an end-of-life trajectory." U.S.S.G. § 1B1.13(b)(1)(A); *accord* 18 U.S.C. § 3582(d)(1). Following Merica's request for a sentence reduction and a review of Merica's medical records, the BOP's medical staff "determined that [Merica] does not meet

the terminal medical criteria" for the BOP's Reduction in Sentence program. (Dkt. 285-3 at 862.) Specifically, in the letter denying his release, the warden stated that medical staff determined Merica (1) does not have a terminal illness with a life-expectancy of less than 18 months, (2) he is independent with his self-care, and (3) he does not meet the age criteria. (Dkt. 275-4 at 1.) Merica's medical records also suggest that, although he was previously diagnosed with prostate cancer, he has not received a terminal diagnosis. (*See* Dkt. 285-3 at 862; Dkt. 291-1 at 42.) In fact, according to notes from a medical visit in February of 2026, Merica's cancer is in remission, and he is "feeling well with no complaints." (Dkt. 291-1 at 7.) The Fourth Circuit has recently held that, where a defendant's records showed that he was "responding well to treatment" for a disease that *could* be terminal, the district court did not err in finding that it was not terminal in that instance. *United States v. Holley*, 179 F.4th 985, 990 (4th Cir. 2026). For purposes of § 1B1.13(b)(1)(A), "[t]he defendant must instead establish that his disease is progressing despite treatment and is expected to continue progressing to the point of causing death." *Id.* Merica does not provide any evidence of this progression. Rather, his records show evidence of stabilization and remission. Accordingly, subsection (b)(1)(A) does not apply at this time.

*ii. Section 1B1.13(b)(1)(B)*

Nor does Merica demonstrate the extraordinary and compelling circumstances set forth in § 1B1.13(b)(1)(B). Even assuming Merica is "experiencing deteriorating physical or mental health because of the aging process," his records do not reflect that this deterioration "substantially diminishes [his] ability . . . to provide self-care within the environment of a

correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). His cancer is in remission, and he reported "feeling well" with "no complaints" earlier this year. (Dkt. 291-1 at 7.) "Generally, inability to provide self-care requires a showing of mobility challenges, inability to eat meals, or inability to maintain personal hygiene." *United States v. Shelton*, No. 3:14-cr-00016, 2026 WL 196477, at *3 (W.D. Va. Jan. 26, 2026). Merica does not claim any of these challenges or disabilities, nor does he provide any evidence that his medical conditions preclude his ability to provide self-care.

*iii. Section 1B1.13(b)(1)(C)*

Merica also fails to offer any allegations or evidence that he has a medical condition requiring "long-term or specialized medical care *that is not being provided*." U.S.S.G. § 1B1.13(b)(1)(C) (emphasis added). The NPR article and Merica's generalized claim that medical understaffing at his facility "[l]eads to inmates not being treated in a timely manner" does not suffice to show that *he* is not being treated promptly, or that BOP is not providing *him* with the specialized medical care he needs. (Dkt. 275 at 6.) In fact, the record suggests the opposite. BOP medical staff have provided ongoing medical treatment for Merica's cancer, including referrals to urology specialists outside of the prison, (*see* Dkt. 285-3 at 242–44, 254, 272–73, 280–82, 366, 897), weekly radiation and Lupron injections following his diagnosis, (*see id.* at 852–895, 938, 985, 989–97, 1003), and ongoing monitoring throughout his treatment, (*see* Dkt. 291-1 at 1–9). He has received prescription medication for his high cholesterol, and the medical staff appears to have monitored this condition through visits and EKGs since 2014. (Dkt. 285-3 at 5.) It appears that Merica is receiving the care that he needs

for his conditions; he does not claim that he is unable to receive any form of specialized or long-term care.

*iv. Section 1B1.13(b)(2)*

Next, Merica asserts extraordinary and compelling circumstances under § 1B1.13(b)(2). Section 1B1.13(b)(2) designates the following combination of characteristics as "extraordinary and compelling reasons" warranting a reduction: "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2). As a 65-year-old man who has spent 20 years in prison, Merica clearly fulfills prongs (A) and (C). (*See* Dkt. 285-1 at 13; Dkt. 248 at 2.) As for element (B), "[t]he guidelines do not describe what it means for an inmate to experience a 'serious deterioration in physical or mental health because of the aging process,' but courts in the Fourth Circuit have found 'serious deterioration' in the face of serious medical impairments." *United States v. Beeman*, No. 5:14-cr-00051, 2025 WL 2014335, at *3 (W.D. Va. July 17, 2025).

Altogether, Merica's conditions do not demonstrate a serious decline in physical health due at least in part to the aging process. The following medical conditions were listed in the "current" section of Merica's medical records, as of 2025: malignant neoplasm of prostate (prostate cancer), hyperlipidemia (high cholesterol), vitamin D deficiency, gingivitis, enlarged prostate, and prediabetes. (*See* Dkt. 285-3 at 5–6; Dkt. 285 at 4.) In recent years, he has also been diagnosed with various dental issues, mononeuropathy and pain in his upper limbs, and

hypertension, but these issues have been marked as "resolved." (Dkt. 285-3 at 6–8.) The doctor's notes from Merica's February 2026 visit say that Merica reported "feeling well with no complaints at this time" and observed that Merica "seems comfortable" and "does not look in pain." (Dkt. 291-1 at 7–8.) The notes also say that there is "[n]o evidence of progression or metastasis at this time," that Merica should continue Lupron, and that his high cholesterol is responding well to medication. (*Id.* at 8–9.) Notes from his clinical encounters throughout 2025 and early 2026 do not show any reports of pain or serious discomfort. (*See id.* at 2–12, 29–30, 36, 40.) Merica does not assert in his motion that he is experiencing chronic pain or suffering, or that the treatment and medication he has received at his facility has not effectively managed his symptoms. Accordingly, Merica does not show extraordinary and compelling reasons under § 1B1.13(b)(2).[2]

2. Need to Care for Mother

Merica's motion also discusses his 91-year-old mother's health conditions and his need to care for her. (Dkt. 275 at 5; Dkt. 285 at 4–5.) Subsection 1B1.13(b)(3) of the Commission's policy statement deems the "*incapacitation* of the defendant's parent when the defendant would be the *only available caregiver* for the parent" an extraordinary and compelling circumstance. U.S.S.G. § 1B1.13(b)(3)(C) (emphases added). Here, Merica does not claim that his mother is

[2] The government argues that because Merica "declined diagnostic care for his prostate for eight years despite BOP medical staff's constant and repeated recommendations for a prostate biopsy," he "should not receive the benefit of compassionate release . . . when his refusal to receive care likely contributed to his current medical condition." (Dkt. 289 at 8 (emphasis omitted).) Merica's refusal to obtain a biopsy from June 2016 through April 2024, despite being informed of the risks, does not automatically preclude a finding of extraordinary and compelling circumstances under § 1B1.13(b)(2). The government offers no authority to suggest that an inmate's medical decisions should guide the court's analysis of whether there is serious deterioration because of the aging process. But the fact that Merica's elevated PSA levels began ten years ago, in 2016, (Dkt. 285-3 at 6), suggests that his cancer is not entirely "because of the aging process" and could be at least partly exacerbated by his refusal to partake in further screening.

incapacitated; her advanced age, her decision not to go to the doctor, and her weight loss do not suffice to show incapacitation. *See United States v. Green*, No. 2:23-cr-00008, 2026 WL 1661664, at *3 (W.D. Va. June 8, 2026) (looking to the BOP Program Statements for guidance on the meaning of incapacitation, which defines it as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [individual] . . . is completely disabled, meaning that the [individual] . . . cannot carry on any self-care and is totally confined to a bed or chair" (cleaned up)). Nor does he provide anything to suggest that he is the *only* available caregiver for her. (*See* PSR ¶ 35 (noting that Merica has two siblings).) The court sympathizes with and understands Merica's desire to care for his elderly mother. However, Merica does not demonstrate the extraordinary and compelling circumstances set forth in § 1B1.13(b)(3)(C)—that he is the only available caregiver for an incapacitated parent.

3. Length of Sentence & Impact of *Dean v. United States*

In his *pro se* motion, Merica cites the *Dean v. United States* decision and asserts that his "predicate sentence was never looked at in light of the Supreme [C]ourt ruling regarding the predicate sentence to my 924(2)'s." (Dkt. 275-1 at 2 (citing *Dean*, 581 U.S. 62 (2017)).) He selects § 1B1.13(b)(6) as grounds for a sentence reduction—that he "received an unusually long sentence, [he] served at least 10 years of the term of imprisonment, and a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) would produce a gross disparity between the sentence being served and the sentence likely to be imposed on the date [he] filed this motion, after full consideration of [his] individualized circumstances." (Dkt. 275 at 5–6.)

In *Dean*, the Supreme Court held that the mandatory minimum sentence for possessing a firearm in connection with a drug trafficking crime set by 18 U.S.C. § 924—"five years for the first conviction and 25 years for a second"—may be considered by the sentencing court when it calculates a just sentence for the predicate drug offense. 581 U.S. at 64, 71. Merica was convicted of two counts under § 924(c). (Dkt. 161 at 1.) *Dean* clarifies that Merica's sentencing judge, Judge Conrad, was free to consider the "mandatory minimum[s] under § 924(c) when calculating an appropriate sentence for the predicate offense." 581 U.S. at 71.

In a supplemental notice of authority, (Dkt. 292), the government discusses the recent *Rutherford v. United States* decision, in which the Supreme Court analyzed whether Congress's nonretroactive 2018 amendments to the "stacking requirement" for § 924(c) sentences can serve as grounds for early release in subsequent compassionate release motions. 146 S. Ct. 1320, 1326–27 (2026). After Congress promulgated the First Step Act of 2018, "[a] 25-year consecutive sentence is now required only for a violation that occurs after a prior conviction under this subsection has become final." *Id.* at 1327 (cleaned up). But the Supreme Court held that "Congress's nonretroactive change to § 924(c)—considered by itself or in combination with other factors—cannot make a prisoner eligible for compassionate release." *Id.* at 1335. In doing so, it reasoned that "nonretroactive amendments to criminal penalties are the norm," and a sentencing "disparity is an unexceptional feature of a system in which nonretroactivity is the default." *Id.* at 1330. It concluded that the § 1B1.13(b)(6) policy statement is invalid to the extent that it suggests Congress's nonretroactive change to 924(c) can make a prisoner eligible for compassionate release. *Id.* at 1335.

Judge Conrad already reduced Merica's sentence based on the 2018 amendments to the § 924(c) stacking provisions. (Dkt. 267 at 4–5.) In the instant motion, Merica's request focuses the *Dean*, a Supreme Court opinion from 2017, rather than the 2018 statutory amendment to § 924(c) addressed in *Rutherford*. Thus, *Rutherford*'s holding does not directly govern Merica's § 1B1.13(b)(6) argument. Still, Merica does not demonstrate extraordinary and compelling reasons under this provision for several reasons.

First, *Dean* does not appear to constitute a "change in the law" within the meaning of § 1B1.13(b)(6). *See United States v. Brown*, No. 2:11-cr-00152, 2024 WL 3357836, at *5 (E.D. Va. July 10, 2024) ("The defendant points to a case out of the United States District Court for the Western District of Wisconsin, in which the court recognized *Dean* as a change of law; but while *Dean* changed the law in the District of Wisconsin, it did not do so in [the Eastern District of Virginia]. . . . [T]he defendant does not point to a rule in the Fourth Circuit that was equivalent to [a case prohibiting courts from considering mandatory minimums when determining the predicate offense sentence] in the Seventh Circuit."). Even if *Dean* is a "change in the law," it does not appear to be retroactive. *See United States v. Duncan*, No. 24-3008, 2026 WL 2413597, at *1 (7th Cir. Aug. 18, 2026) ("[A] nonretroactive change in the law (such as the decision in *Dean*) is not an extraordinary and compelling reason for a sentence reduction.").

Further, even if it is retroactive, there is no evidence in the record that this court would have calculated Merica's sentence on the 21 U.S.C. § 846 count differently such that there would be a gross disparity between Merica's 235-month sentence and the sentence imposed

now, after *Dean* was decided. (*See* Dkt. 267 at 4 (noting that if Merica was sentenced again in 2021, the sentences for Counts One and Two would be unchanged even after the First Step Act).) While *Dean* provides a case-specific mitigating factor, it is unclear whether consideration of the mandatory minimum under § 924(c) would warrant a further reduction below the 235-month sentence that was imposed for Merica's predicate drug offense. For all these reasons, the court does not find that any "change in the law" following the *Dean* decision "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6); *see Brown*, 2024 WL 3357836, at *5.

4. <u>"Other Reasons" and Combination of Asserted Reasons</u>

Merica also selects § 1B1.13(b)(5) as grounds for a sentence reduction in his case. Any additional circumstances supporting compassionate release must, in isolation or in combination with other circumstances, be similar in gravity to those described in §§ 1B1.13(b)(1)–(4). U.S.S.G. § 1B1.13(b)(5). However, Merica presents no particularly compelling or exceptional circumstances warranting relief. The court notes that Merica's disciplinary record during his more than twenty years in BOP custody is outstanding. He has not obtained any disciplinary infractions, and he worked his way down to a low security facility from a USP. (Dkt. 285 at 1, 5; *see* Dkt. 285-1; Dkt. 250-3.) He has also completed several classes, including the BOP drug education course, (*see* Dkt. 250-6 at 1–4; Dkt. 285-1 at 10), and he obtained his G.E.D. while in custody, (*see* Dkt. 285-1 at 10). He has served as a prison mentor and participated in Bible study. (*See* Dkt. 250-6 at 5–11; Dkt. 267 at 6; Dkt. 285 at 5.)

The court commends Merica for his rehabilitation and hard work. But rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. *See Davis*, 99 F.4th at 659 ("While Congress did specify that rehabilitation *alone* cannot be considered an extraordinary and compelling reason for release, it may be considered as one factor among several under § 3582(c)(1)(A)."); *United States v. Graves*, No. 7:16-cr-00056, 2020 WL 2847631, at *2 (W.D. Va. June 2, 2020).

The court has considered all the foregoing factors asserted as grounds for a sentence reduction, both individually and in combination, and concludes that they are not extraordinary and compelling reasons warranting compassionate release. Merica's age, his health conditions, his desire to care for his elderly mother, his rehabilitation and good behavior, and the *Dean* decision do not, in the aggregate, reach the "especially unusual and convincing" threshold. *Rutherford*, 146 S. Ct. at 1330. Merica has not shown any extraordinary and compelling reasons supporting a second § 3582(c)(1)(A) sentence reduction.

Because the court holds that Merica has not established extraordinary and compelling reasons for sentence reduction, the court need not proceed to analysis of the 18 U.S.C. § 3553(a) factors. *See United States v. Allen*, No. 4:13-cr-00024, 2024 WL 3836097, at *3 n.4 (W.D. Va. Aug. 15, 2024); *United States v. Banks*, No. 2:19-cr-00006, 2026 WL 950134, at *2 (W.D. Va. Apr. 8, 2026). The court will deny the motions for compassionate release.

## IV. Conclusion

For the foregoing reasons, the court will deny Merica's motion for compassionate release, (Dkt. 275), and the supplemental motion for compassionate release filed on his behalf, (Dkt. 285).

An appropriate Order will issue.

**ENTERED** this 3rd day of September, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE